UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>MICHAEL COOK, )<br>)<br>Defendant. )<br>_____ ) | Case No.  2:10-cr-00061-ECR-PAL<br><br>ORDER ON MOTION TO<br>RECONSIDER OR CORRECT<br>SENTENCE |

On April 4, 2011, Defendant filed an Emergency Motion to Reconsider or to Correct Defendant's Sentence (#34). The Government has filed an opposition (#35) to the motion, and Defendant has filed a reply (#36) in support of the motion.

We believe that the reference by the Court in the sentencing hearing to Defendant's wife as the "breadwinner right now" cannot be fairly characterized as "clear error," let alone as "mistake." The Presentence Report ("PSR") reads in part as follows:

> "Financial Condition
>
> 47.   A financial investigation was conducted, which included a review of credit reports, Consolidated Lead Evaluation and Reporting (CLEAR) data, and a personal financial statement.

```
                        * * *
            MONTLY CASH FLOW
            Income
            Government Assistance (Food
            Stamps)                              $369.00

            Spouse's Income                    $1,040.00
                                               _____

                        Total Income           $1,409.00"
```

No objections to the Presentence Report were filed prior to the sentencing hearing. Nor did Defendant or his attorney object in any way to the Presentence Report when specifically asked during the sentencing hearing. The Report was signed by the Probation Officer and his supervisor on April 1, 2011.

Of course, the above figures and presentation must be taken in light of paragraph 48 of the Report which indicates Defendant's food stamps terminated on November 30, 2010, and that the the short term job which Defendant's wife held terminated on December 30, 2010.

Further, paragraph 40 reflects the fact that Defendant had been employed in Meadows Mall at the Hickory Farms kiosk from October 22, 2010, to December 30, 2010, where he earned $8.25 an hour. We do not have information to calculate the total income Defendant received from that work. The monthly income cash flow figure in the Report does not attribute that income to Defendant.

Paragraph 40 also states that Defendant received his last real estate commission in December 2009, after he sold a house. That date is approximately 15 months prior to the issuance of the PSR. The Financial Condition section of

1  the PSR does not indicate that further real estate commissions are to be
2  anticipated in the near future.
3      All in all, it is not unreasonable based on the Presentence Report and on the
4  Report of Financial Condition contained in it, that the Defendant anticipated, in
5  spite of job terminations and end of food stamp entitlement, monthly cash flow to
6  be based on his wife's income and that he would not anticipate having his own
7  income to meet his debts, expenses, and liabilities. Thus, the presentation may
8  fairly be read to indicate that for the moment at least, Defendant's wife was the
9  anticipated breadwinner for the family.
10     Our analysis of the PSR indicated that the monthly cash flow, as set forth
11 above, represented at best hoped-for income that should be compared to
12 Defendant's to determine his ability to pay restitution. The presentation indicated
13 that in fact little likelihood that Defendant would be able to pay restitution.
14     Our comment with respect to "breadwinner" was, "she's the breadwinner
15 right now." This scant five word comment can hardly be characterized as any
16 essential basis for our decision if the overall decision is examined. Our decision
17 to impose a prison sentence was not based on this transient comment. It merely
18 reflected how the family's situation appeared specifically at the time of the
19 decision.
20     Obviously, unfortunately, there is not much bread to apply to Defendant's
21 expenses and debts on the facts of this case whoever the breadwinner is. But in
22 making this comparison, this is how things look.
23     In any event, we conclude that whether Defendant or his wife was the
24 breadwinner does not rise to Constitutional magnitude. Nor do we conclude that
25 the Court acted on the basis of materially false or unbelievable information in
26 sentencing Defendant. Thus, our statement, even if wrong, would not rise to a
27 violation of Defendant's due process rights.
28     Even though we find no substantial merit in Defendant's contentions that

1   the Court unlawfully and improperly based its sentence on the conclusion that
2   Defendant's wife was the family breadwinner, we conclude that the motion to
3   reconsider calls upon us to consider anew whether, assuming that the Defendant
4   instead was the family breadwinner, the Court's decision on Defendant's sentence
5   should, if it could be, changed.

6   While it appears we retain no authority to modify the sentence in the
7   absence of clear error, we believe it would be beneficial for us to again explain
8   our analysis.

9   In reviewing the sentence imposed, we seek to avoid assuming a merely
10  defensive posture with respect to the previous order. There is serious doubt based
11  on our findings here and Fed.R.Crim.P. 35(a), whether, in any event, we would
12  have any authority to modify the sentence, but we proceed to again examine the
13  sentence.

14  The issue as to who was the family breadwinner was certainly not at the
15  core of the Court's decision, but at most was a peripheral observation or
16  consideration.

17  Of course, who is the breadwinner of the family would be a proper
18  consideration in deciding between a sentence of imprisonment and one of
19  probation. A judge may be more inclined to grant probation to the family bread-
20  winner in a close case. However, on reconsideration of our previous order, we
21  conclude even making an assumption that Defendant was the family bread-
22  winner that other factors which the Court considered would still lead to the
23  conclusion the Court's previous order was correct.

## DISPARITY

25  The sentence was within the Sentencing Guidelines. The Guidelines
26  provide, in Defendant's case, for a Guideline Range for imprisonment of 6 to 12
27  months. The Guidelines also permit the Court to impose a sentence of probation
28  of 1 to 5 years. A sentence of incarceration of 6 months is certainly well within

4

the Guidelines advisory recommendations. Recent reports to the U.S. Judicial Conference indicate that, nationally, judges are now sentencing within the Guidelines in approximately 55% of the sentences imposed. (Remarks to the U.S. Judicial Conference Regarding Sentencing, Hon. Patti B. Saris, Chair of the U.S. Sentencing Commission, March 15, 2011). Use of the Guidelines in sentencing addresses, to some extent, the issue of disparity in sentencing set forth in 18 U.S.C. § 3553(a). We do not have any figures to indicate the count in the respect to sentences under this specific statute, but in light of the facts here, we do not conclude the result of the sentencing would be different even if the statistics showed more sentences of probation than of incarceration. We just don't know how the facts and circumstances of other sentences match up.

The cases cited by Defendant from the District of Utah do not persuade us that our sentence was disparate or improper. We certainly respect our colleagues in Utah and admire their work, but we must make our own independent judgment based on the facts presented to us at the sentencing hearing. We have no way of knowing the facts and circumstances of the Utah cases, the condition of administration of this particular statute there, or the situation of the defendant's involvement in those cases as compared to the Defendant here.

## DETERRENCE

In this case, the issue of deterrence for protection of these archeological petroglyphs played a central role in our decision to sentence Defendant to a term of incarceration. Government counsel argued at sentencing that removal or the possibility of removal of the petroglyphs from Indian lands in the area was a serious problem. The testimony of the Government witness, Miss Turner, showed that there is another petroglyph missing from the same site and that within the last year alone there have been incidents in this area of people going to the petroglyph site and shooting at the petroglyphs with paint ball guns, as well as another incident at Red Rock. As argued by the Government counsel, people are

not respecting these petroglyphs or the national laws intended to protect them.  In many ways, removing or vandalizing the petroglyphs can never really be undone because of their cultural and religious significance to the Paiute and Shoshone Indian tribes on whose tribal lands the petroglyphs are found.

Certainly Congress in enacting this legislation, making removal of these archeological objects a serious, criminal offense, must have concluded that the statute was necessary to deter such conduct.

This sentence which we have imposed here will send a message to others to beware before taking the ancient Indian writings from these and other tribal lands.

We have little doubt that what has happened to Defendant in this case will deter him from removing such artifacts from designated federal lands such as these.  But the issue of deterrence here presents a much broader issue.  The sentence we imposed will send at least some sort of message to others to deter them from taking or defacing these objects.  Deterrence is needed, and we have addressed that issue in our sentence.

## HISTORY AND CHARACTERISTICS

We have concluded that the Defendant knew that what he was doing was unlawful.  Defendant is an intelligent person.  He has held a real estate licence for a number of years.  We conclude such a person would be more likely to recognize his acts were unlawful than the average person might.  The area was reasonably well signed to put those passing on the road that these were federally designated lands.  The difficult removal of this petroglyph and placing it on display showed that he knew and appreciated its value, and from that conclusion we would further conclude that he knew that it was wrongful and at least very likely against the law to remove it.  The average citizen might not necessarily recognize what this artifact was and its significance.

The sentence largely turns on how serious one views the offense.

## SERIOUSNESS OF THE OFFENSE

At the sentencing, two Indian witnesses testified as to the importance of this object to their religion and what it meant to the members of the affected tribe to have the petroglyph removed. Their testimony was moving, sincere, and truthful. It sounded in the depths of the importance of this ancient art to the tribe.

## RESPECT FOR THE LAW

An important factor in determining what the sentence should be in the case is to promote respect for the law. Our sentence as imposed will have that effect.

## JUST PUNISHMENT FOR THE CRIME

The sentence of imprisonment will, in our view, provide just punishment for the offense. Defendant knew what he was doing and, we believe, deserves the sentence imposed. We conclude our sentence will have the effect of just punishment, while a probationary sentence would fall short.

## PROTECTING THE PUBLIC

Protecting the public from further crimes of Defendant is not a factor. We have little doubt Defendant will not commit further crimes, particularly in light of his past record and what has happened to him here.

## SENTENCES AVAILABLE TO THE COURT

We have given careful consideration to the kinds of sentences available here in this case. Probation was an option. However, we have concluded, in our discretion, in light of the evidence in its entirety, and the important considerations set forth above, that the case called for a sentence of incarceration.

Our general practice is to state on the record at sentencing all of the considerations we conclude should bear on the sentence. We, to a considerable extent, use the analyses as we present it in making our ruling to reach the final decision on the sentence. We followed that protocol in this case, so that everyone affected would know the bases for our decision.

One must have sympathy for the Cook family in the circumstances of this

case. Unfortunately in the world of criminal sentences, it is often the innocent who may suffer from the consequences.

Defense counsel has certainly provided outstanding representation of Defendant. She has made some very good points. No one could ask for more. Her arguments are well presented and effective. However, we conclude the Government has the better side of the matter.

Therefore, IT IS HEREBY ORDERED that Defendant's Motion (#34) is DENIED.

Dated this 11th day of April 2011.

_____
EDWARD C. REED, JR.
Senior U.S. District Judge

USA v. Michael Cook
2:10-cr-0061-ECR-PAL

8